UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABUDUFATAH ABDULLA, ASIA MUSA,
MANAL ALI, WAGDI ALI, MOHAMED
ALI, and G.A.,

               Plaintiffs,               Case Number 18-12073
v.                                                 Honorable David M. Lawson

KIRSTJEN NIELSEN, DEPARTMENT OF
HOMELAND SECURITY, DONALD NEUFELD,
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, LEE CISSNA,
and CORINNA LUNA,

               Defendants,
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT WITH PREJUDICE**

Plaintiff Abudufatah Abdulla, a United States citizen, filed Form I-130 petitions (Petition for Alien Relative) on behalf of his wife and four children, Yemeni citizens, seeking their entry into the United States. The United States Customs and Immigration Service (USCIS) rejected the petitions for want of sufficient evidence of the validity of the marriage and parentage of the children. The Board of Immigration Appeals (BIA) affirmed the decision and denied Abdulla's motion to reopen or for reconsideration. He has filed a five-count complaint challenging the BIA's decisions. The government has moved for summary judgment. Because Abdulla has not shown that the BIA committed reversable error or that his constitutional rights were violated, the motion will be granted, and the complaint will be dismissed.

I.

Abdulla filed five separate I-130 immigrant petitions on behalf of his claimed family members and co-plaintiffs Asia Musa (his wife), Mohamed Ali, Wagdi Ali, Manal Ali, and "G.A."

(his children). He alleged that he married Asia Musa on September 25, 2002. In support of the validity of the marriage, Abdulla submitted a Yemeni marriage contract dated September 25, 2002. The contract, however, was not registered with the Yemeni civil authority until nearly seven years later, on July 29, 2009, despite Yemeni law requiring registration within fifteen days after consummating the marriage. In addition to submitting the marriage documents, Abdulla also submitted a death certificate for Musa's prior husband, Mohamed Muthana Ali Saleh, to establish that Musa was legally free to marry Abdulla. The death certificate is dated December 15, 2002, but states that Saleh died approximately twenty months earlier on February 25, 2001.

Due to the discrepancies, the USCIS requested that Abdulla provide secondary evidence so that it could determine whether the record contained sufficient and reliable evidence of Saleh's death, and therefore whether the marriage to Musa was legal. Secondary evidence can include certain affidavits, medical records, and religious documents where necessary. 8 C.F.R. §§ 103.2(b)(2)(i), 204.2. Abdulla responded with affidavits, which, he says, validate the marriage between him and Musa. The USCIS reviewed the submission and all documentation submitted in support of the I-130 petition and issued a decision denying the petition. The agency determined that Abdulla had not submitted sufficient documentary evidence to establish his marriage with Musa was valid.

Abdulla also filed I-130 petitions on behalf of each of Musa's four children who, he alleges, are his own children as well. Because the children's birth certificates were not registered contemporaneously at the time of birth, the USCIS directed Abdulla to submit secondary or DNA evidence to establish the parentage for Wagdi Ali, Mohamed Ali, and Manal Ali. Abdulla was not asked to submit DNA evidence of parentage for G.A. because Abdulla is listed as his father on the

birth certificate. Abdulla responded to the requests with personal statements, evidence that he had requested DNA testing, affidavits, and some photographs.

The USCIS denied each of Abdulla's petitions on behalf of Musa's children, determining they were not considered biological children or stepchildren. The USCIS found that the children did not qualify as stepchildren because Abdulla did not submit secondary evidence to prove Musa's prior marriage had ended and she was free to marry Abdulla. Since he failed to prove that he was legally married to Musa, he could not prove Musa's children were his stepchildren. Additionally, the USCIS determined that the children did not qualify as Abdulla's biological children because he failed to submit sufficient evidence of their parentage. For Wagdi, Mohamed, and Manal, Musa's prior husband was listed on their birth certificates, and Abdulla had failed to provide DNA evidence showing he was their father. For all of Musa's children, Abdulla had failed to present evidence that they had been legitimated or that a *bona fide* parent-child relationship existed.

Abdulla appealed the USCIS's decision to the BIA. The BIA dismissed the appeal, concluding that Abdulla had not established that Musa was free legally to marry him and finding it significant that Abdulla had failed to submit secondary evidence as requested. After the BIA issued its decision, Abdulla filed a motion to reopen or for reconsideration, accompanied by evidence about the conditions in Yemen and new DNA evidence.

The BIA treated the motion as a motion to reopen *sua sponte* and denied it for lack of jurisdiction because of certain filing deficiencies. Abdulla did not sign the appeal, and the attorney who did sign it failed to include documentation that she had the authority to act for Abdulla. Alternatively, the BIA reviewed the additional evidence and denied the motion on the merits

because Abdulla had failed to submit evidence relevant to "[t]he critical issue in this case . . . the validity of [Abdulla's] current marriage to Musa." (ECF No. 11-1, PageID.64).

After the BIA denied Abdulla's motion to reopen or for reconsideration, he filed his complaint in this Court for himself and his family members. They allege that they are entitled to relief under the Mandamus Act (count 1) and the Administrative Procedures Act (APA) (count 2); and that their rights to substantive (count 3) and procedural (count 4) due process have been violated. The complaint contains an additional count for mandamus (count 5) and asks for similar relief under the Declaratory Judgment Act (count 6). Abdulla contends that the BIA erred because he properly established that his co-plaintiffs are his legal family members. He also argues that the error amounted to a denial of his constitutional rights because he has a right to live in the same country as his family, and because Yemeni petitions are subject to a higher standard of proof than other immigration petitions. The defendants respond that the BIA did not err because Abdulla could not show his marriage to plaintiff Asia Musa was valid, and therefore could not show he was the lawful father of the four plaintiff children. Moreover, his constitutional rights were not violated because the right to live with his family does not override immigration laws, and he received all process that was due to him.

The defendants have moved for summary judgment.

## II.

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the burden of showing that no genuine issues of material fact exist," and it "must demonstrate the 'basis for its motion, and identify[] those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 627-28 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

To oppose that showing, "[t]he nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "The reviewing court must then determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must "view the facts and draw all reasonable inferences in favor of the non-moving party." *Ibid.* (quoting *Matsushita*, 475 U.S. at 587).

Although the plaintiffs contest the BIA's conclusions as to the facts supporting the I-130 petitions, the basic procedural facts are the focus of the plaintiffs' claims. There is no material dispute as to those. Where the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

A.

The plaintiffs insist that they have furnished enough evidence to show that Abdulla's marriage to Musa is valid, the defendants have denied the petitions in bad faith, and that the decisions of the USCIS and BIA are arbitrary and capricious. They contend that they are entitled to an order under the Mandamus Act and section 706 of the APA compelling a favorable adjudication. The defendants argue that the requests to compel agency actions must be dismissed because there are no outstanding agency actions to compel.

Mandamus jurisdiction in federal courts is codified at 28 U.S.C. § 1361, which states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." But mandamus relief is available only when three requirements are met: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011) (quotation marks omitted). The defendant has a clear duty when the action that the plaintiff seeks to compel is not discretionary. *Ibid.*

Under the APA, a court may set aside final agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *GTE Midwest, Inc. v. FCC*, 233 F.3d 341, 344 (6th Cir. 2000). That standard "is the least demanding form of judicial review of administrative action." *David ex rel. Farmers Bank & Capital Trust Co. of Frankfort, Ky. v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) ("The arbitrary and capricious standard is the most deferential standard of judicial review of agency action, upholding those outcomes supported by a reasoned explanation, based upon the evidence in the record as a whole."). The APA standard is especially deferential in the context of immigration policy. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977).

When a plaintiff seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits. *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004).

There is no outstanding duty owed to the plaintiffs in this case. The USCIS and the BIA already have adjudicated the I-130 petitions, the BIA appeals, and the motions to reopen or reconsider. Therefore, these claims must be dismissed. *Hussein v. Beecroft*, 782 F. App'x 437,

442 (6th Cir. 2019); *see also Martinez, et al. v. Mayorkas*, No. 13-485, 2014 WL 4908447, at *1 (S.D. Ohio 2014) (holding that dismissal of I-130 action is proper once the petition has been adjudicated); *Elbeghdad v. USCIS*, No. 07-0020, 2008 WL 4405044 at * 1 (S.D. Ohio 2008) (holding that USCIS's adjudication of the action rendered moot the petition to compel agency action).

Moreover, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Hammond v. Bausman*, No. 11-2666, 2011 WL 4590501, at *2 (E.D.Pa. Sept. 30, 2011). The plaintiffs make no such assertion here.

B.

The plaintiffs also ask this Court to reverse the final decision of the BIA denying Abdulla's motion to reopen or reconsider because the BIA acted arbitrarily or capriciously when it determined that Abdulla had not established that his marriage to Musa was valid nor that Abdulla was legally the father of the children plaintiffs. With the motion to reopen or reconsider, Abdulla submitted new evidence of arranged marriages in Yemen and DNA evidence proving the children were biologically his. The BIA held that "the new evidence . . . is unrelated to the issue of the termination of [Musa's] prior marriage," and denied his appeal. (ECF No. 11-1, PageID.64). The BIA also rejected the motion on the grounds that it lacked jurisdiction over the claim due to Abdulla's filing deficiencies, that is, that his attorney who signed the motion had failed to submit the correct form documenting the authorization to file the motion.

In order for Abdulla to succeed on his petition for both Musa and the children, he must establish that Musa's prior marriage to Saleh had terminated. *See* 8 C.F.R. § 204.2. As the USCIS points out, both the death certificate documenting the death of Musa's first husband and the

marriage certificate documenting Abdulla's marriage to Musa were recorded years after the related events they sought to memorialize, calling into question their reliability. *See Matter of Lugo-Guadiana*, 12 I. & N. Dec. 726, 729 (BIA 1968) ("The same weight does not attach to a delayed birth certificate, such as the one before us, as would attach to one contemporaneous with the actual birth.").

Because the long-delayed filings raised questions on the certificates' validity, the USCIS asked Abdulla for secondary evidence. In response, Abdulla says he submitted two affidavits establishing the validity of the marriage, although the Court has not been able to locate the affidavits in the roughly 1,500-page administrative record. The defendants argue that affidavits are not considered secondary evidence. On this point, the regulations conflict. In the section dealing with submission of benefits requests, the regulation discusses "Submitting secondary evidence and affidavits." 8 C.F.R. § 103.2(b)(2)(i). The regulation implies a distinction between secondary evidence and affidavits, explaining that "[s]econdary evidence must overcome the unavailability of primary evidence, and affidavits must overcome the unavailability of both primary and secondary evidence." *Ibid.* However, the section addressing petitions for admission of relatives states that "[s]econdary evidence may include . . . [s]uch evidence of the marriage and termination of prior marriages as religious documents, tribal records, census records, *or affidavits*." 8 C.F.R. § 204.2(b)(2)(i) (emphasis added). Nonetheless, the regulations plainly authorize the agency to give the affidavits the weight it deems appropriate. 8 C.F.R. § 103.2 ("The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Service.").

Moreover, the USCIS is not required to accept any evidence that is not considered primary evidence. *See* 8 C.F.R. § 204.1(f)(1) ("Documentary evidence . . . must be in the form of primary

-8-

evidence, if available. When it is established that primary evidence is not available, secondary evidence *may* be accepted.") (emphasis added). It cannot be said, therefore, that the USCIS's decision that Abdulla failed to establish the validity of his marriage to Musa with the evidence he provided was arbitrary or capricious. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (stating that a court should set aside an agency decision only "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

Similarly, the USCIS decisions denying classification of Musa's children as Abdulla's children were not arbitrary or capricious. The agency entertained two theories of parentage: that the children were Abdulla's biological children, or that they were his stepchildren from Musa's prior marriage. It found, though, that Abdulla failed to submit satisfactory evidence that the children were born in wedlock, that he had legitimated them before their 18th birthdays, or that he had established *bona fide* father-child relationships with them before their 21st birthdays as required by 8 C.F.R. § 204.2.

According to the regulation, if the petition is submitted by the purported father of a child born out of wedlock, the father must show that he is the natural father and that a *bona fide* parent-child relationship was established when the child was under 21 years old. "Primary evidence to establish that the petitioner is the child's natural father is the beneficiary's birth certificate, issued by civil authorities and showing the father's name", and "evidence of a parent/child relationship should establish more than merely a biological relationship." 8 C.F.R. § 204.2(d)(2)(iii). Wagdi

Ali, Mohamed Ali, and Manal Ali had a different man's name as their father on their birth certificates. Therefore, even with the DNA evidence, Abdulla did not meet the statutory criteria.

Abdulla's name is on G.A.'s birth certificate, so Abdulla could establish that G.A. is his legitimate child only if he could show that Musa's prior marriage was legally terminated by the time Musa bore G.A. *See* 8 C.F.R. § 204.2(d)(2)(i) ("If a petition is submitted by the father, the birth certificate of the child, a marriage certificate of the parents, and proof of legal termination of the parents' prior marriages, if any, issued by civil authorities must accompany the petition."). However, the USCIS found that the late-registered death certificate of Musa's prior husband and affidavits were insufficient evidence that Musa's prior marriage was legally terminated, and she was legally free to marry Abdulla. It concluded, therefore, that Abdulla failed to show that G.A. was his child for purposes of the immigration laws. Because the USCIS was free to reject the non-primary evidence presented by affidavit, it properly applied the applicable regulation when reaching its conclusion.

Finally, the BIA did not err when concluding that it lacked jurisdiction over Abdulla's motion. A motion to reopen or reconsider must be made by "the Service, or by the party affected by the decision." 8 C.F.R. § 1003.2(a). Here, the motion was made and signed by Abdulla's attorney. That is permissible as long as the motion accompanies the requisite authorization forms, which it did not. That filing deficiency prevented the BIA from having proper jurisdiction.

C.

Nor can the plaintiffs prevail on their constitutional claims. Abdulla argues that the defendants have violated his substantive due process rights to family integrity and privacy. In support, Abdulla says that the Supreme Court has recognized the right to maintain a family, the right to marry, and the right of marital privacy, and cites the seminal caselaw. In none of the cases

Abdulla cites, however, did the plaintiff challenge immigration decisions or petition to live with non-citizen family members.

Abdulla's right to maintain a family does not override Congress' power to regulate immigration. *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) (concluding that "that theory runs headlong into Congress' plenary power over immigration" (citing *Landon v. Plasencia*, 459 U.S. 21, 32 (1982))); *Bangura v. Hansen*, 434 F.3d 487, 495 (6th Cir. 2006); *see also Morales-Izquierdo v. Dep't of Homeland Sec.,* 600 F.3d 1076, 1091 (9th Cir. 2010) (holding that "lawfully denying Morales' adjustment of status does not violate any of his or his family's substantive rights protected by the Due Process Clause" even "when the impact of our immigration laws is to scatter a family or to require some United States citizen children to move to another country with their parent"); *Alharbi v. Miller*, 368 F. Supp. 3d 527, 571 (E.D.N.Y. 2019) ("The right to be in the United States cannot be tacked onto other fundamental rights, lest they be expanded far beyond their intended constitutional reach.").

Abdulla also asserts a procedural due process claim. Due process rights only attach once a plaintiff asserts a liberty or property interest. *Almario v. Attorney Gen.,* 872 F.2d 147, 151 (6th Cir. 1989). To establish a liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants him a protected right. *Ibid*.

Even assuming that the plaintiff has a protected liberty interest, he received all process due to him. Here, Abdulla received notice of USCIS's intent to deny the petitions, an opportunity to submit supplemental evidence, an opinion regarding the reasons for denial, and an appeal. That is all that is required. *See Cabrera-Ramos v. Gonzales*, 233 F. App'x 449, 453 (6th Cir. 2007) ("In [the immigration] context, due process requires notice reasonably calculated to provide actual notice of the proceeding and a meaningful opportunity to be heard."); *Gebhardt*, 879 F.3d at 988.

III.

Even when looking at the material facts in the light most favorable to the plaintiffs, Abdulla and his family members have not shown that the BIA acted arbitrarily or capriciously by declining to reopen their case, or that they were deprived of due process.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment (ECF No. 22) is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   May 20, 2020